UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED TIQUAN WILLIAMS,

        Petitioner,                      Case No. 1:07-cv-1076

v.                                        Honorable Janet T. Neff

CINDI S. CURTIN,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner, through retained counsel, pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, I recommend that the petition be dismissed because it plainly appears from the face of the petition that Petitioner is not entitled to relief.

**Discussion**

I.        Factual allegations

Petitioner Fred Tiquan Williams presently is incarcerated with the Michigan Department of Corrections and housed at the Oaks Correctional Facility. Petitioner was convicted by the Calhoun County Circuit Court as a second felony offender, MICH. COMP. LAWS § 769.10, after he entered a plea of nolo contendere to first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), resisting and obstructing a police officer, MICH. COMP. LAWS § 750.81d(1), and possession of less than 25 grams of cocaine, MICH. COMP. LAWS § 333.7403(2)(a)(v). On April 17, 2006, he was sentenced to terms of imprisonment of 87-to-360 months, 24-to-36 months, and 36-to-72 months, respectively.

Petitioner's convictions arose out of a traffic stop on July 31, 2005, by the Calhoun County Sheriff's Department. According to the transcript of an evidentiary hearing filed as an attachment to Petitioner's application, Deputy Adam Scott Mattens was in the area of an apartment building in Pennfield Township when he observed a blue and silver van parked in front of the building. (Pet., Att. A, Hrg. Tr. 9-10, docket #1-2.) The windshield of the van was cracked in the top left corner of the pane, outside the driver's line of vision. (Hrg. Tr. 12.) Mattens had received an anonymous tip earlier in the day about a possible drug sale occurring in the van. (Hrg. Tr. 9, 15.) He therefore parked around the corner so he could observe the van. He saw a black male emerge from the apartment and enter the driver's side door of the van, where he remained for about 30 seconds before returning to the building. Shortly thereafter, Mattens observed the same man leave the building again, get back into the van and started to drive off. (Hrg. Tr. 10.) Mattens followed the van in his police cruiser and made a traffic stop. (Hrg. Tr. 10.)

When he was stopped, Petitioner told Mattens he did not think the crack was an infraction because it did not obscure his vision. Mattens told Petitioner that he could not have any cracks in the windshield. (Hrg. Tr. 12.) Mattens testified that he planned to write a waivable ticket, under which the fine would be waived if the windshield was repaired within ten days. Mattens took Petitioner's identifying information and returned to his cruiser to check the LEIN system for outstanding warrants and license validity. According to Mattens, he proceeded slowly to check Petitioner's documents, awaiting the arrival of his back-up. (Hrg. Tr. 13-14.) Reviewing the registration, Mattens discovered that the van was not registered to Petitioner. He again approached Petitioner's car. Petitioner informed him that the van belonged to his mother. (Hrg. Tr. 16.) Mattens acknowledged that he expected Petitioner to be the driver of the van when he stopped it, based on information from another officer. (Hrg. Tr. 17.)

After his back-up, Deputy Gates, arrived, Mattens asked Petitioner for permission to search the vehicle, which Petitioner gave. (Hrg. Tr. 17-18.) Petitioner was cooperative and waited in front of the car with Gates while Mattens searched the vehicle. During his search, Mattens found in the space between the front seats a ripped plastic bag containing a small amount of marijuana. Mattens approached Petitioner, advised him to put his hands behind his back for arrest, and grabbed Petitioner's left arm. Gates grabbed Petitioner's right arm. Petitioner elbowed Mattens in the nose and began to run away. Petitioner ran down the street and into the woods. The officers lost sight of Petitioner momentarily. When they saw him again, he was sitting on the ground with his hands behind his back. Mattens demanded to see Petitioner's hands. Petitioner took off his shoes and crawled underneath heavy shrubberies into the wood. Petitioner then found a hole in the shrubs and crawled through the woods into a back yard. (Hrg. Tr. 20.) Mattens attempted to chase Petitioner,

but found it difficult to make his way through the brush. When he broke through the woods, he heard "a lot of screaming, get out of my house, get out of my house, things of that nature." (Hrg. Tr. 20.) When he came through the woods, Mattens saw Deputy Gates, who informed him that Petitioner had broken through the back door of a residence. Gates went to the front of the house and Mattens went in the back. (Hrg. Tr. 20.) When he got inside the house, Mattens saw the homeowner, a former United States marshal, with his weapon drawn on Petitioner, who was prone on the floor with his hands out. (Hrg. Tr. 21.) Petitioner was arrested. After arrest, another small bag of marijuana was discovered in his pocket. (Hrg. Tr. 22.) After Petitioner was arrested, officers discovered multiple pieces of rock cocaine near where Petitioner had removed his shoes. (Hrg. Tr. 22.)

Prior to entry of his plea of nolo contendere, Petitioner moved to suppress the fruits of the search, contending that Matten's traffic stop was unconstitutional and pretextual. The trial court held an evidentiary hearing on February 16, 2006. After the hearing and supplemental briefing, the court denied Petitioner's motion to suppress. Petitioner entered his plea on March 21, 2006, and was sentenced on April 17, 2006.

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals on September 22, 2006. On appeal, Petitioner raised four issues, including a challenge to the trial court's denial of his motion to suppress based on an unconstitutional traffic stop in violation of the Fourth Amendment. The court of appeals denied leave to appeal for lack of merit in the grounds presented. Petitioner, through counsel, sought leave to appeal to the Michigan Supreme Court, raising the identical grounds. The supreme court denied leave to appeal on June 26, 2007. Petitioner filed the instant habeas petition on October 25, 2007, in which he raises only the

suppression issue. The Court ordered that an amended petition be filed on the form. The amended petition was filed on December 3, 2007.

  II.  Analysis

In his sole ground for habeas relief, Petitioner contends that drug evidence discovered by the officers should have been suppressed because it was obtained in violation of the Constitution. Petitioner's Fourth Amendment claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2002); *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996); *Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal

proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. Jones*, 678 N.W.2d 627 (Mich. Ct. App. 2004); *People v. Galloway*, 675 N.W.2d 883 (Mich. Ct. App. 2003). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

To satisfy the second prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert v. Parke*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).

Petitioner has not alleged any facts showing that the state's mechanism has broken down. Rather, it is clear that the Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration. Petitioner has attached to his petition the transcript of the state-court evidentiary hearing on his motion to suppress evidence. The transcript demonstrates that the trial court fully and thoughtfully considered Petitioner's motion to suppress, after affording a full evidentiary hearing. The Michigan Court of Appeals reviewed Petitioner's application for leave to appeal and determined that it lacked merit. Petitioner applied for leave to appeal to the Michigan Supreme Court, which denied his application. Therefore, even if this Court were to disagree with

the determination of the Michigan courts, that disagreement would be insufficient to satisfy the second prong of the Sixth Circuit standard. *Gilbert*, 763 F.2d at 824.

Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure is not cognizable on habeas review.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be summarily dismissed pursuant to Rule 4 because it plainly appears from the face of the application that Petitioner is not entitled to habeas relief. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  December 17, 2007                  /s/  Joseph G. Scoville
                                           United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).